A07A1139, A07A1140. LAWYERS TITLE INSURANCE CORPORATION v. NEW FREEDOM MORTGAGE CORPORATION; and vice versa.
(655 SE2d 269)

BARNES, Chief Judge.

In Case No. A07A1139, Lawyers Title Insurance Corporation ("Lawyers Title") appeals the judgment entered, following a jury verdict, in favor of New Freedom Mortgage Corporation ("New Freedom") for $190,195.30 in compensatory damages, $49,097.49 in prejudgment interest, and $53,685.31 in expenses and attorney fees. Lawyers Title contends the trial court erred by giving charges on "Causation; Plaintiff's sole negligence," "Causation; Arising Out of," "Misrepresentation and Concealment," mitigation of damages, and "Confidential Relationship," and by failing to give Lawyers Title's proposed charge on "Causation, Plaintiff's acts, vicarious liability." Lawyers Title also alleges the trial court erred by granting New Freedom's motion to exclude evidence of any contributing cause to New Freedom's loss other than the closing attorney's fraud or dishonesty.

In Case No. A07A1140, New Freedom cross-appeals, challenging the trial court's ruling that the closing protection letter issued to New

Freedom by Lawyers Title is not an insurance agreement, and thus preventing New Freedom from seeking recovery of the statutory penalties contained in OCGA § 33-4-6 because of Lawyers Title's bad faith denial of New Freedom's claim based upon the closing protection letter.

This is one of three appeals between these parties arising from substantially similar facts and issues. The general facts and circumstances are stated in *Lawyers Title Ins. Corp. v. New Freedom Mtg. Corp.*, 285 Ga. App. 22 (645 SE2d 536) (2007) ("*Lawyers Title v. New Freedom I*"), cert. denied, *New Freedom Mtg. Corp. v. Lawyers Title Ins. Corp.*, 285 Ga. App. 909 (July 12, 2007), the first case to be decided by this court:

> New Freedom is a residential mortgage lender, whereas Lawyers Title is in the business of issuing title insurance policies to residential home buyers and lenders. In an effort to induce New Freedom to purchase title insurance, Lawyers Title issued to New Freedom an indemnification agreement known in the insurance industry as a "closing protection letter" ("CPL").
>
> Under the CPL, Lawyers Title agreed to indemnify New Freedom under certain circumstances for actual losses New Freedom incurred in connection with residential real estate closings conducted by an agent authorized to issue title insurance on behalf of Lawyers Title (an "issuing agent"). Among other things, the CPL provided that Lawyers Title would reimburse New Freedom when its actual loss "arises out of" (1) the issuing agent's failure to follow New Freedom's written closing instructions relating to the collection and payment of funds due to New Freedom, or (2) the issuing agent's "(f)raud or dishonesty . . . in handling (New Freedom's) funds or documents in connection with such closings."

Id. at 23.[1]

The dispute in this appeal arises from a residential mortgage closing that occurred on May 10, 2001, in which New Freedom made a $274,500 loan to Shunita Surney secured by real property located in Atlanta. In connection with the closing, Lawyers Title issued a lender's title insurance policy to New Freedom. The closing attorney

---

[1] The second case, *Lawyers Title Ins. Corp. v. New Freedom Mtg. Corp.*, 288 Ga. App. 350 (654 SE2d 190) (2007) ("*Lawyers Title v. New Freedom II*"), was tried jointly with this one, but was not consolidated for appeal.

for the transaction was Bart Cox of the law firm then known as Brochstein, Bantley & Babcock. The parties do not dispute that the CPL was in effect and binding at the time of the closing, and that New Freedom was Cox's client under Georgia real estate law.

The HUD-1 settlement statement transmitted to New Freedom as part of the closing reflected that the residential property had been appraised at $305,000 and that the buyer Surney was making a down payment of $33,724.29. Construed in favor of the verdict, the evidence shows that the sale of the property was a sham transaction involving a straw purchaser and an inflated property appraisal.

The evidence showed that the scam was created by Denean Denham, who was a loan officer for Southern Mortgage, a mortgage broker. Denham and some of her associates in the scam approached Surney asking her to use her credit to apply for a loan, and promising her that she would make money by renovating the property and then selling it within six months. They also promised to give her the money for the down payment and $56,000 for her participation, enough money to renovate the house and to make the mortgage payments until the house was resold.

At the closing, Cox made several payments from the loan proceeds that he did not disclose to New Freedom. Instead of paying the seller $221,723.18 as indicated in New Freedom's disbursement statement, actually only $95,295.44 was disbursed to her. He paid $52,952 to Surney's boyfriend, $17,182.52 to another associate in the scam, and $56,293.22 to Good Living Investment Group and Construction Company, owned by Denham's boyfriend.

For a few months after the sale, Surney made payments on the loan from the $52,952 check to Daniel Calloway, but then Surney stopped making payments and the loan went into default. As a result, the property was foreclosed upon and then sold with a deficiency balance of $190,195.30, which New Freedom was required to pay.[2]

The enumerations of error in this appeal are identical to those asserted in *Lawyers Title v. New Freedom II*, supra, and virtually the same as those asserted in *Lawyers Title v. New Freedom I*, supra, 285 Ga. App. 22. Therefore, it is not surprising that our opinions in those cases greatly control the outcome of Lawyers Title's appeal in Case No. A07A1139.

---

[2] After making the loan, New Freedom assigned the loan to a third party under an agreement which required New Freedom to reimburse the third party in circumstances where fraud was involved.

*Case No. A07A1139*

1. For the reasons stated in *Lawyers Title v. New Freedom I*, supra, 285 Ga. App. at 24-27 (1), and *Lawyers Title v. New Freedom II*, supra, 288 Ga. App. at 351 (1), we agree that the trial court erred in its charge on "Misrepresentation and Concealment," and that the judgment in this appeal must be reversed. We find no merit to New Freedom's argument that we should not consider this issue because Lawyers Title failed to object properly to the charge. Instead, we find that

> we must "consider and review erroneous charges where there has been a substantial error in the charge which was harmful as a matter of law, regardless of whether objection was made hereunder or not." OCGA § 5-5-24 (c). "Substantial errors in the charge on the essential elements are usually harmful as a matter of law so as to invoke OCGA § 5-5-24 (c)." *Phelps v. State*, 192 Ga. App. 193, 195 (1) (384 SE2d 260) (1989), citing *Foskey v. Foskey*, 257 Ga. 736, 737 (363 SE2d 547) (1988). Likewise, erroneous jury charges on legal principles that go to the "crux" of the appellant's case are considered substantial and harmful as a matter of law. See *Pearson v. Tippmann Pneumatics*, 281 Ga. 740, 744 (3) (642 SE2d 691) (2007).
>
> Here, the trial court erroneously charged the jury that an essential element of actual fraud — fraudulent intent — did not have to be proven. And, the question of fraudulent intent went to the crux of Lawyers Title's defense that it was not required to indemnify New Freedom under the language of the CPL. Specifically, Lawyers Title presented evidence that the Brochstein lawyer who handled the closing did not act with fraudulent intent, did not collude with the other wrongdoers, and complied with New Freedom's written closing instructions in good faith as he reasonably understood them. In contrast, New Freedom presented evidence that the Brochstein lawyer colluded with others to commit mortgage fraud, intentionally disregarded the written closing instructions in order to hide the fraud, and misrepresented information on the HUD-1 settlement statement for the same purpose. Under these circumstances, where the erroneous charge concerned legal principles central to Lawyers Title's defense, we conclude that the trial court's charge was substantially erroneous and harmful as a matter of law. See, e.g., *Lawrence v. State*, 206 Ga. App. 404-405 (1) (425 SE2d

411) (1992) (erroneous charge that element of intent did not have to be proven constituted substantial error requiring reversal); *Jackson v. State*, 205 Ga. App. 513, 514-515 (3) (422 SE2d 673) (1992) (same).

*Lawyers Title v. New Freedom II*, supra, 288 Ga. App. 352 (1).

2. Also for the reasons stated in *Lawyers Title v. New Freedom I*, supra, 285 Ga. App. 27-31 (2), 31-33 (3), 33 (4), and *Lawyers Title v. New Freedom II*, supra, 288 Ga. App. at 352-353 (2), (3), we find no merit to Lawyers Title's allegations that the trial court erred by giving charges on "Causation; Plaintiff's sole negligence," "Causation; Arising Out of," "Confidential Relationship," and mitigation of damages, as well as the trial court's partial grant of New Freedom's motion in limine to exclude evidence of any contributing cause of the loss other than Cox's fraud or dishonesty.

3. Lawyers Title also contends the trial court erred by failing to give Lawyers Title's proposed charge on "Causation, Plaintiff's acts, vicarious liability."[3] We find no error.

The charge requested by Lawyers Title stated:

> In determining whether or not the Defendant is obligated to indemnify the Plaintiff you must also consider Plaintiff's actions in the closing. The Defendant is not obligated to indemnify Plaintiff for losses arising from the Plaintiff's own negligence.

> Likewise, the Defendant is not obligated to indemnify the Plaintiff for losses arising from the negligence or fraud of any of the Plaintiff's agents. If you find that the broker in these two transactions, Southern Mortgage, was an agent for the Plaintiff, then any negligence or fraud of the broker would be imputed to the Plaintiff as if the Plaintiff had committed such negligence or fraud itself. In other words, if you find that the broker in these two transactions was an agent for the Plaintiff, the Plaintiff shall be bound for the care, diligence, and fidelity of his agent in his business, and hence the Plaintiff shall be bound for the neglect and fraud of his agent in the transaction of such business. Furthermore, the Plaintiff may be held liable for the tortious acts of

---

[3] Although entitled "Causation, Plaintiff's acts, vicarious liability" in this appeal, this charge appears to be the same requested charge discussed and ruled upon as "Causation; Plaintiff's Acts" in *Lawyers Title v. New Freedom I*, supra, 285 Ga. App. at 29-31 (2) and is the identical charge ruled upon in *Lawyers Title v. New Freedom II*, supra, 288 Ga. App. at 352 (2).

his agent committed within the scope of his business, even though the acts occurred without the Plaintiff's command or assent.

(Citations omitted.)

Regarding the first paragraph of the requested charge, the trial court charged the jury that "[i]n determining whether or not the defendant is obligated to indemnify the plaintiff you must also consider the plaintiff's actions at closing. A party is not obligated to indemnify another for a loss which arises solely from the other's own negligence." The first sentence of this paragraph of the charge given and the requested charge are the same and, thus, no error can exist in failing to give the requested charge. The same is true for the second sentence of the paragraph, except that the trial court used "party" rather than the titles of the parties. The failure to give a requested jury charge in the precise language requested only warrants reversal when the charge given does not substantially cover the applicable principles of law. *Morita v. State*, 270 Ga. App. 372, 375 (3) (606 SE2d 595) (2004). As this clearly is not the case here, the trial court did not err by refusing to give the exact charge requested by Lawyers Title.

The trial court also did not err by refusing to give the second paragraph of the requested charge because it is not a correct statement of the law applicable in this case. In *Lawyers Title v. New Freedom I*, supra, 285 Ga. App. 27-31 (2), this court rejected the premise underlying the second paragraph of the requested charge, i.e., that Lawyers Title was not obligated to indemnify New Freedom if New Freedom Mortgage or Southern Mortgage was also negligent. See id. at 29-30 (2). Instead, we held that

the CPL required Lawyers Title to reimburse New Freedom for actual loss incurred by New Freedom "when such loss arises out of the failure of Brochstein to comply with New Freedom's written closing instructions or the fraud or dishonesty of Brochstein." Under Georgia law, unless an agreement for indemnification explicitly states that the negligence of the indemnitee is covered, the agreement will not be interpreted as a promise to save the indemnitee from liability resulting strictly and exclusively from its own negligence. Significantly,

however, although language in an agreement may not be sufficiently explicit to indemnify the indemnitee against liability *resulting strictly from its own negligence alone*, such less than explicit language may be sufficient to require indemnification for

> damages *resulting from the combination of the indemnitee's negligence and the indemnitor's negligence.*

> Applying this principle, this Court has indicated that where, as here, an indemnification clause requires indemnification of losses that "arise out of" certain specified events but does not explicitly mention the indemnitee's negligence, the clause still requires full indemnification although the indemnitee's negligence may have partially caused the loss. As such, even though the CPL did not explicitly mention coverage for the negligence of New Freedom, Lawyers Title was required to indemnify New Freedom even if the loss was partially caused by New Freedom's own negligence.

(Citations and punctuation omitted; emphasis in original.) Id. at 29-30 (2). A trial court's refusal to give a requested charge is error only when the requested charge is a correct statement of law that is pertinent and material to an issue in the case and contains information that is not substantially covered by the charge actually given. *Carter v. State*, 263 Ga. 401, 403 (4) (435 SE2d 42) (1993). Moreover, this part of the requested charge is also inconsistent with *our ruling* in Division 4 of *Lawyers Title v. New Freedom I*, supra, 285 Ga. App. at 33, in which we affirmed the trial court's grant of a motion in limine preventing

> Lawyers Title from arguing or introducing evidence that the loss was caused *in part* by the negligence of New Freedom or other third parties. . . . As previously noted, the concept of comparative fault did not apply in this case. Instead, given the language of the CPL, Lawyers Title was required to fully indemnify New Freedom even if the loss was partly attributable to the negligence of New Freedom or some third party not covered under the CPL; Lawyers Title could avoid indemnifying New Freedom only if the loss was the result of New Freedom's *sole* negligence.

Accordingly, the trial court did not err by refusing to give Lawyers Title's requested charge on "Causation, Plaintiff's acts, vicarious liability."

### Case No. A07A1140

4. In this cross-appeal New Freedom alleges the trial court erred by ruling that the CPL issued by Lawyers Title to New Freedom is not an insurance agreement, thereby preventing New Freedom from

recovering the statutory penalties authorized by OCGA § 33-4-6 for bad faith denial of New Freedom's claim. We disagree because, under Georgia law, the CPL is not a policy of insurance so as to authorize imposition of the penalties in OCGA § 33-4-6. This Code section provides in part:

> In the event of a loss which is covered by a *policy of insurance* and the refusal of the insurer to pay the same within 60 days after a demand has been made by the holder of the policy and a finding has been made that such refusal was in bad faith, the insurer shall be liable to pay such holder, in addition to the loss, not more than 50 percent of the liability of the insurer for the loss or $5,000.00, whichever is greater, and all reasonable attorney's fees for the prosecution of the action against the insurer.

(Emphasis supplied.) OCGA § 33-4-6 (a). Lawyers Title would qualify generally as an insurer under OCGA § 33-1-2 (4): " 'Insurer' means any person engaged as indemnitor, surety, or contractor who issues insurance, annuity or endowment contracts, subscriber certificates, or other contracts of insurance by whatever name called." See *J. Smith Lanier & Co. v. Southeastern Forge*, 280 Ga. 508, 510 (630 SE2d 404) (2006). But, that is not the issue.

The issue here is whether the CPL qualifies as an insurance policy, and we find that it does not. In our law, " '[i]nsurance' means a contract which is an integral part of *a plan for distributing individual losses* whereby one undertakes to indemnify another or to pay a specified amount or benefits upon determinable contingencies." (Emphasis supplied.) OCGA § 33-1-2 (2).

In *Ponder v. Fulton-DeKalb Hosp. Auth.*, 256 Ga. 833, 835 (2) (353 SE2d 515) (1987), the Supreme Court of Georgia set forth the essential nature of an insurance policy:

> Insurance is a contract whereby one party agrees to assume certain risks for another party in consideration for the payment of premiums and to pay the insured party a specified amount on the happening of a particular contingency. [Cits.] *A necessary element of insurance is distribution of risk.*

(Emphasis supplied.) Under Lawyers Title's CPL, however, no second party assumes the risk and significantly no distribution of risk is accomplished. Therefore, the CPL is not an insurance policy within the meaning of OCGA § 33-4-6, and the trial court did not err by so ruling.

*Judgment affirmed in Case No. A07A1140. Judgment reversed in Case No. A07A1139. Smith, P. J., and Miller, J., concur.*

DECIDED NOVEMBER 29, 2007 —

*Nelson, Mullins, Riley & Scarborough, Jeffrey L. Mapen, Kenneth L. Millwood*, for appellant.

*Smith, Gambrell & Russell, Thomas M. Barton, Aaron P. M. Tady*, for appellee.